JAMES N. KINLAW v. LONG MFG. N.C., INC.

No. 33

(Filed 6 November 1979)

**Sales § 8; Uniform Commercial Code § 8— express warranty of farm tractor — action against manufacturer for breach—privity not required**

     Privity in the sale of goods is not necessary to a purchaser's action on an express warranty relating to the goods which is directed by its terms to the purchaser. Therefore, an action by the purchaser of a farm tractor against the manufacturer to recover for breach of an express warranty contained in the owner's manual is not barred by the absence of contractual privity between the parties in the sale of the tractor.

     Justices BROCK and CARLTON did not participate in the consideration or decision of this case.

PLAINTIFF appeals pursuant to G.S. 7A-30(2) from a decision of a divided panel of the Court of Appeals affirming the dismissal of his claim pursuant to G.S. 1A-1, Rule 12(b)(6) by *Judge Herring* on 14 March 1978 in BLADEN Superior Court. The decision below is reported at 40 N.C. App. 641, 253 S.E. 2d 629 (1979).

     *R. C. Soles, Jr., Attorney for plaintiff appellant.*

     *Hester, Hester and Johnson, by Worth H. Hester, and Biggs, Meadows, Batts, Etheridge and Winberry, by William D. Etheridge and Auley M. Crouch III, Attorneys for defendant appellee.*

     *Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and James C. Gulick, Associate Attorney, for the state, amicus curiae.*

EXUM, Justice.

     This is an action to recover damages allegedly incurred by plaintiff-purchaser as a result of defendant-manufacturer's breach of an express warranty of a tractor. The sole question presented is whether the absence of contractual privity between the parties in the sale of the tractor bars the claim. We hold that it does not.

     Plaintiff alleges that in November, 1975, he purchased a new farm tractor and attachments from Sessions Farm Machinery, Inc., an authorized dealer of defendant-manufacturer. An owner's manual issued by defendant and delivered to plaintiff with the

Kinlaw v. Long Mfg.

new tractor expressly warranted to the new owner that each tractor sold by defendant's authorized dealers would be free from defects in material and workmanship.[1] Plaintiff alleges that the tractor began "breaking down" when put to farm use immediately after delivery; that various parts of the tractor were defective, inoperative, or missing; that the defective parts were duly returned to defendant's Tarboro factory for repairs or replacement; and that defendant failed or refused to repair or replace the parts. Plaintiff prays for $100,000 damages allegedly attributable to various economic losses occasioned by breach of the warranty. Defendant filed answer setting up various defenses including a so-called "disclaimer" contained in the warranty and incorporated in the complaint.[2] Simultaneously he moved to dismiss for failure of the complaint to state a claim upon which relief could be granted. The motion was grounded entirely upon the complaint's failure "to allege facts to establish privity of contract between the plaintiff and the defendant manufacturer." The trial court allowed the motion on this ground alone.[3] The Court of Appeals affirmed, Judge Parker dissenting. We reverse.

For the purposes of this appeal the parties have stipulated that "There was not privity of contract between the plaintiff and defendant." A majority of the Court of Appeals agreed with the trial court that the absence of privity barred the claim. Finding

---

1. The warranty attached to and incorporated in the complaint provides in part:

"Long Mfg. N.C. Inc., warrants that . . . each new farm or agricultural tractor sold by it and its *authorized dealers will be free from defects in material and workmanship under normal use and service* for a period of one year or one thousand (1,000) hours of operation; whichever occurs first from date of purchase. Long's obligation under this warranty is limited to repairing or replacing at its option in an authorized Long Tractor Dealer's place of business any part or parts that, which within the applicable period previously stated, are returned to its factory in Tarboro, North Carolina, or one of its distributing branches . . . ."

2. The disclaimer provides:

*IMPORTANT*

The obligation of Long set forth in the first paragraph above shall be the exclusive remedy for any breach of warranty hereunder, in no event shall Long be liable for any general, consequential, or incidental damages, including without limitations, any damages for loss of use or loss of profits.

---

3. A complaint may be dismissed under Rule 12(b)(6) if it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Lack of merit may consist in an absence of law to support the type of claim made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). We deal here only with the failure of the complaint to allege privity. The effect of the disclaimer on plaintiff's claim is not presently before the Court inasmuch as defendant's motion to dismiss, the order of the trial court allowing the motion, the decision of the Court of Appeals and defendant's brief are all grounded solely on the privity question. We express no opinion as to the sufficiency of other aspects of the complaint or as to whether the warranty here sued upon, the terms of which are disclosed in the complaint, permits the recovery of damages to the extent sought by the plaintiff.

the requirement of privity in warranty actions such as this one too well established in the decisions of this Court to be ignored or overruled, the Court of Appeals concluded that "our law requires that only a person in privity with the warrantor may recover on the warranty for mechanical devices." We disagree. We find reason and authority to support our holding that privity in the sale of goods is not necessary to a purchaser's action on an express warranty relating to the goods.

The oft-cited general principle of the privity requirement is given in *Service Co. v. Sales Co.*, 261 N.C. 660, 668, 136 S.E. 2d 56, 62 (1964), as follows:

"A warranty is an element in a contract of sale and, whether express or implied, is contractual in nature. Only a person in privity with the warrantor may recover on the warranty; the warranty extends only to the parties to the contract of sale. *Murray v. Aircraft Corp.*, 259 N.C. 638, 131 S.E. 2d 367; *Prince v. Smith*, 254 N.C. 768, 119 S.E. 2d 923; *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21."

The apparent simplicity of this principle belies its difficult history.

Although warranty's more recent guise is contract, its heritage began in tort. Aggrieved purchasers of an earlier age were afforded relief through an action on the case in the nature of deceit, a forerunner of the modern tort of misrepresentation. Toward the latter part of the 18th Century pleading procedures wedded the action with that of *assumpsit*, producing the "curious hybrid" of warranty, "born of the illicit intercourse of tort and contract, unique in the law." Prosser, Handbook of the Law of Torts, p. 634 (4th Ed. 1971). *See also Terry v. Bottling Co.*, 263 N.C. 1, 9, 138 S.E. 2d 753, 758 (1964) (Sharp, J., later C.J., concurring); Ames, The History of Assumpsit, 2 Harv. L. Rev. 1 (1888). That a buyer of a defective product had a cause of action "*quasi ex contractu*," and could choose between a suit on a contract of warranty or a declaration in tort for a false warranty, was well recognized in our earlier cases. *See, e.g., Ashe v. Gray*, 88 N.C. 190 (1883); *Bullinger v. Marshall*, 70 N.C. 520 (1874); *Scott v. Brown*, 48 N.C. (3 Jones) 541 (1856).

## Kinlaw v. Long Mfg.

Privity is a child of contract law, delivered by the courts to limit the responsibilities of contracting parties to those persons consensually involved in the primary transaction. It was originally felt that without such a limitation on liability, "the most absurd and outrageous consequences" would ensue in litigation caused by a flood of spurious claims. *Winterbottom v. Wright*, 10 M&W 109, 114, 152 Eng. Rep. 402, 405 (Exch. 1842). The *Winterbottom* rationale is justified in warranty cases, however, only to the extent that the warranty sued on is inherently an element of a true contract. Regarding the tort aspects of a false warranty claim, the rule of privity has itself produced absurd consequences and has no real application. Courts have long struggled to contrive ingenious "exceptions" to avoid unjust results in particular cases. *See* Gillam, Products Liability in a Nutshell, 37 Ore. L. Rev. 119, 153-155 (1958). In many states today these exceptions have so swallowed the rule as to lead to the total abandonment, whether by judicial fiat or legislative decree, of the privity requirement in warranty actions.[4] The erosion of the doctrine is by now familiar and well documented history. *See* Frumer and Friedman, Products Liability § 16.03 (1979); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L. Rev. 791 (1966); Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960).

Our jurisdiction's allegiance to the principle of privity has, at best, wavered. After holding that an absence of a contractual relationship between the parties precluded a personally injured purchaser from maintaining an action on *implied* warranty against a remote manufacturer, *Thomason v. Ballard and Ballard Co.*, 208

---

4. Numerous statutes have abolished the privity defense to actions on express or implied warranty brought by a consumer or foreseeable user of the warranted goods. *See, e.g.*, Ark. Stat. Ann. § 85-2-318.1 (Supp. 1979); Colo. Rev. Stat. § 4-2-318 (1973); Me. Rev. Stat. 11, § 2-318, *as amended* 1969 (Supp. 1978-79); Mass. Ann. Laws ch. 106, § 2-318, *as amended* 1971 (Supp. 1979); N.H. Rev. Stat. Ann. § 382-A:2-318, *as amended* 1973 (Supp. 1977); S.C. Code § 36:2-318 (1976); Tenn. Code Ann. § 23-3004 (Supp. 1977). The same result appears to have been accomplished by case law in many other jurisdictions. *See, e.g., Morrow v. New Moon Homes, Inc.*, 548 P. 2d 279 (Ala. 1976) (privity defense abolished in implied warranty; tenor of the case suggests same result probable as to express warranty); *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362, 219 N.E. 2d 726 (1966) (no privity required under a third party beneficairy theory); *Dailey v. Holiday Distributing Corp.*, 260 Iowa 859, 151 N.W. 2d 477 (1967); *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 571 P. 2d 48 (1977) (express warranty); *Evangelist v. Bellern Research Corp.*, 199 Kan. 638, 433 P. 2d 380 (1967) (implied warranty); *Media Productions Consultant, Inc. v. Mercedes Benz of N.A., Inc.*, 262 La. 80, 262 So. 2d 377 (1972); *Spence v. Three Rivers Builders and Supply, Inc.*, 353 Mich. 120, 90 N.W. 2d 873 (1958); *Beck v. Spindler*, 256 Minn. 543, 99 N.W. 2d 670 (1959) (implied warranty); *Milbank Mutual Insurance Co. v. Proksch*, 309 Minn. 106, 244 N.W. 2d 105 (1976) (express warranty); *Whitaker v. Farmhand, Inc.*, 567 P. 2d 916 (Mont. 1976); *Hiles v. Johnston Pump Co. of Pasadena*, 560 P. 2d 154 (Nev. 1977); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69 (1960); *Inglis v. American Motors Corp.*, 3 Ohio St. 2d 132, 209 N.E. 2d 583 (1965) (express warranty); *Iacono v. Anderson Concrete Corp.*, 42 Ohio St. 2d 88, 326 N.E. 2d 267 (1975) (implied warranty); *Kassab v. Central Soya*, 432 Pa. 217, 246 A. 2d 848 (1968); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W. 2d 77 (Texas 1977) (implied warranty, but broad language suggests same for express warranty).

N.C. 1, 179 S.E. 30 (1935), this Court in *Simpson v. Oil Co.*, 217 N.C. 542, 8 S.E. 2d 813 (1940), held that *express* assurances addressed by the manufacturer to the purchaser could give rise to a warranty claim against the manufacturer notwithstanding lack of privity. The express warranty in *Simpson* derived from the manufacturer's statement on a label on a can of spray insecticide that the product was nonpoisonous to humans. The plaintiff purchaser in that case suffered severe reactions when the spray came into contact with her skin. We held that the original manufacturer had warranted his product in such a way as to make a breach of that warranty actionable:

> "Here we have written assurances that were obviously intended by the manufacturer and distributor of Amox for the ultimate consumer, since they are intermingled with instructions as to the use of the product; and the defendant was so anxious that they should reach the eye of the consumer that it had them printed upon the package in which the product was distributed. The assurances that the product as used in a spray was harmless to human beings while deadly to insects was an attractive inducement to the purchaser for consumption, and such purchase in large quantities was advantageous to the manufacturer. We know of no reason why the original manufacturer and distributor should not, for his own benefit and that, of course, of the ultimate consumer, make such assurances, nor why they should not be relied upon in good faith, nor why they should not constitute a warranty on the part of the original seller and distributor running with the product into the hands of the consumer, for whom it was intended. Upon the evidence in this case, it must be so regarded." 217 N.C. at 546, 8 S.E. 2d at 815-816.

*Dicta* in subsequent cases recognized the validity of the *Simpson* approach to express warranty cases. In *Wyatt v. Equipment Co.*, 253 N.C. 355, 359, 117 S.E. 2d 21, 24 (1960), the Court said: "Absent privity of contract, there can be no recovery for breach of warrant *except in those cases where the warranty is addressed to an ultimate consumer or user.*" (Emphasis added.) Again in *Prince v. Smith*, 254 N.C. 768, 770, 119 S.E. 2d 923, 925 (1961) the Court noted that the manufacturer "may attach to the product a warranty to the ultimate consumer." Later, *Murray v. Aircraft Corp.*, 259 N.C. 638, 131 S.E. 2d 367 (1963), and *Brendle*

*v. General Tire and Rubber Co.*, 304 F. Supp. 1262 (M.D.N.C. 1969), *aff'd* 505 F. 2d 243 (4th Cir. 1974), both quoted the *Wyatt* restatement of the *Simpson* rule.

The rationale of *Simpson* was diluted in *Service Co. v. Sales Co., supra*, 261 N.C. 660, 668, 136 S.E. 2d 56, 62-63 (1964) where the Court said:

> "There is an exception to [the requirement of privity] where the warranty is addressed to the ultimate consumer, and this exception has been limited to cases involving sales of goods, *intended for human consumption, in sealed packages* prepared by the manufacturer and having labels with representations to consumers inscribed thereon." (Emphasis added.)

*Service Co.*'s limitation of *Simpson* was quoted with approval in the majority opinion in *Terry v. Bottling Co., supra*, 263 N.C. 1, 138 S.E. 2d 753 (1964).[5] The limitation was later rendered somewhat more accurately by the Court of Appeals in *Byrd v. Star Rubber Co.*, 11 N.C. App. 297, 300, 181 S.E. 2d 227, 228 (1971):

> "It is true that there has been some slight erosion in this State of the privity requirement in breach of warranty actions. This has been limited to food and drink *and insecticides* in sealed containers which had warnings on the label which reached the ultimate consumer." (Emphasis added.)

The thrust of *Simpson* is, nevertheless, that a manufacturer can extend a warranty beyond the bounds of privity if he makes representations designed to induce a purchase and directed to the ultimate purchaser. Cases since *Service Co.* have continued to develop the *Simpson* doctrine that a manufacturer's courting of the purchaser may serve as a vehicle for warranty liability. In *Tedder v. Bottling Co.*, 270 N.C. 301, 154 S.E. 2d 337 (1967), this Court allowed a plaintiff allegedly injured by a contaminated soft drink to maintain an implied warranty action against the manufacturer.[6] The Court held there, *id.* at 305-06, 154 S.E. 2d at 340:

---

5. Justice, later Chief Justice, Sharp's concurrence in *Terry* yet recognized that *Simpson* stood for the principle that "North Carolina holds a manufacturer to his express warranty on the label without privity." 263 N.C. at 11, 138 S.E. 2d at 759.

6. A *Tedder* type claim is now authorized by statute. Effective October 1, 1979, new G.S. 99B-2(b) provides that a "product liability action" for breach of implied warranty may be brought directly against the manufacturer despite the lack of contractual privity. G.S. 99B-1(1) defines a product liability action to include:

". . . the bottler, by advertising and sales promotions address-ed to the consumer, induced her to 'Come Alive' and that she was 'in the Pepsi Generation.' The advertising was intended to promote the use by the consumer to whom the advertising was addressed. The evidence in this case was sufficient to go to the jury on the theory of implied warranty resulting from the manner in which the Pepsi-Cola was advertised and traveled from the bottler to the plaintiff."

Similarly, in *Corprew v. Geigy Chemical Corp.*, 271 N.C. 485, 157 S.E. 2d 98 (1967), this Court held that a complaint alleging the purchaser's detrimental reliance on directions for use printed on a bag of weed killer stated a claim against the manufacturer based upon breach of express warranty. More recently, our Court of Ap-peals has recognized that a relaxation of the privity requirement may obtain where advertising to the ultimate purchaser establishes an express warranty running from the manufacturer. *Fowler v. General Electric Co.*, 40 N.C. App. 301, 305, 252 S.E. 2d 862, 864 (1979); *McKinney Drilling Co. v. Nello Teer Co.*, 38 N.C. App. 472, 475-76, 248 S.E. 2d 444, 446 (1978); *Williams v. General Motors Corp.*, 19 N.C. App. 337, 340, 198 S.E. 2d 766, 768, *cert. denied*, 284 N.C. 258, 200 S.E. 2d 659 (1973). Our holding today simply reaffirms the vitality of *Simpson.*

Authority from most other jurisdictions holds that a pur-chaser who relies upon[7] a manufacturer's representations can re-cover for breach of an express warranty despite lack of privity.[8] The privity bound procedure whereby the purchaser claims against the retailer, the retailer against the distributor, and the

---

". . . any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, prepara-tion, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertis-ing, packaging or labeling of any product."

Whether the act allows for the recovery of purely economic losses is a question that may require future resolu-tion. *Cf. Gasque v. Eagle Machinery Co.*, 270 S.C. 499, 243 S.E. 2d 831 (1978), construing a similar statute to allow for recovery of both direct and consequential economic losses.

7. The element of reliance need not always be expressly alleged. *It can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such pur-chase or use. See, e.g.,* Official Comment 3 to G.S. 25-2-313; Comment, Article Two Warranties in Commercial Transactions, 64 Cornell L. Rev. 30, 51-54 (1978); *cf. Hawkins Construction Co. v. Matthews Co. Inc.*, 190 Neb. 546, 564-66, 209 N.W. 2d 643, 654-55 (1973), holding that distribution of an advertising brochure with express representations about the product sufficed for a finding of express warranty.

8. In addition to the statutes and cases cited *supra*, footnote 4, *see, e.g., Seely v. White Motor Co.*, 63 Cal. 2d 9, 45 Cal. Rptr. 17, 403 P. 2d 145 (1965); *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W. 2d 643 (1973); *Randy Knitwear v. American Cyanamid Co.*, 11 N.Y. 2d 5, 226 N.Y.S. 2d 363, 181 N.E. 2d 399 (1962). *See also* Frumer and Friedman, Products Liability § 16.04[4][a] (1979) and cases cited therein.

distributor, in turn, against the manufacturer, *see Tedder v. Bot-tling Co., supra,* 270 N.C. at 305, 154 S.E. 2d at 339, is un-necessarily expensive and wasteful. We find no reason to inflict this drain on the court's time and the litigants' resources when there is an express warranty directed by its terms to none other than the plaintiff purchaser. We agree with the Supreme Court of Ohio:

> "The consuming public ordinarily relies exclusively on the representations of the manufacturer in his advertisements. What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted to move against the manufacturer to regroup his loss . . . . Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his adver-tisements and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious." *Rogers v. Toni Home Permanent Co.,* 167 Ohio St. 244, 248-49, 147 N.E. 2d 612, 615-616 (1958). (Citations omitted.)

Plaintiff's posture here is stronger than that of the purchaser whose tastes are shaped by inducements of mass media advertis-ing, *Tedder v. Bottling Co., supra,* 270 N.C. 301, 154 S.E. 2d 337, or whose expectations arise in response to assurances on the product's label, *Corprew v. Geigy Chemical Corp., supra,* 271 N.C. 485, 157 S.E. 2d 98. Plaintiff here purchased both goods and a promise. He bought a new tractor, the performance of which was expressly guaranteed within the limits and upon the terms specified in the warranty contained in the owner's manual. Plain-tiff could reasonably expect the author of the warranty to stand by its promise. He may base a claim upon its alleged breach. We find no "sensible or sound reason" requiring us to hold otherwise.

Plaintiff has alleged an express warranty running directly to him, breach of that warranty, and damages caused by the breach.

The absence of an allegation of privity between plaintiff and the warrantor in the sale of the warranted item is not fatal to the claim. The case must, therefore, be reversed and remanded to the trial court for further proceedings.

　　　Reversed and remanded.

　　　Justices BROCK and CARLTON did not participate in the consideration or decision of this case.