RICHARD EGAN D/B/A CRYSTAL COAST REALTY v. JERRY L. GUTHRIE AND PEGGY D. GUTHRIE

No. 883DC948

(Filed 20 June 1989)

Brokers and Factors § 6.2— sale after listing agreement expired— realtor's failure to comply with best effort requirement— genuine issue of fact

Where defendants agreed to sell their restaurant property to a third party, accepted the sum of $5,000 from that party prior to the expiration of an exclusive listing agreement giving plaintiff the exclusive right to sell the property, and completed the sale of the property two days after the expiration of the

EGAN v. GUTHRIE

[94 N.C. App. 307 (1989)]

listing agreement, nothing else appearing, these actions would have constituted a breach of the exclusive right to sell agreement by defendants and entitled plaintiff to a commission on the sale and summary judgment in this case; however, defendants raised a genuine issue of material fact as to plaintiff's compliance with the requirement of the contract that plaintiff use its best efforts in good faith to secure a purchaser, and summary judgment for plaintiff was therefore improper.

APPEAL by defendants from *Ragan, James E., III, Judge.* Judgment entered 5 July 1988 in CARTERET County District Court. Heard in the Court of Appeals 22 March 1989.

Plaintiff is a citizen and resident of Carteret County, North Carolina, doing business as Crystal Coast Realty. Defendants are also citizens and residents of Carteret County. On 22 February 1987, defendants entered into an exclusive right to sell contract with plaintiff for the sale of the Captain's Choice Restaurant, located on Harkers Island, North Carolina. The contract stated *inter alia* the following:

In consideration of [plaintiff] agreeing to list the . . . property for sale and in further consideration of [plaintiff's] services and efforts to find a purchaser, [plaintiff is] hereby granted the exclusive right, for a period of 6 mo., to and including Aug. 15, 1987, to sell the said property for the price of $350,000 . . .

. . .

[Plaintiff is] to afford [defendant] the full benefit of [plaintiff's] judgment, experience and advice in the marketing of the property. [Defendant] understand[s] that [plaintiff] make[s] no representation or guarantee for a sale of [defendant's] property but [plaintiff] promise[s] to use [plaintiff's] *best efforts* in good faith to secure a purchaser who is ready, willing, and able to purchase the property.

(Emphasis added.) The contract further stated that if plaintiff produced a purchaser who was ready, willing and able to purchase the property on defendant's terms or if the property was sold or exchanged by plaintiff, defendant or any other party, before the expiration of the listing or within 90 days after the expiration of the agreement to any party with whom plaintiff or the listing

service had negotiated as a prospective purchaser, defendant would pay to plaintiff a fee of 6 percent provided defendant was notified in writing by plaintiff of the name of the prospective purchaser.

At some point during the listing period, defendants were approached by a third party, Barnes, who was interested in purchasing the property, but who did not want to purchase through a realtor. Barnes indicated to defendants that he would contact them when the listing agreement expired and quoted defendants a price of $235,000 for the property. Defendants advised Barnes that they would sell him the property for an agreed upon price if plaintiff did not find a purchaser for the property. Prior to 15 August 1987, defendants accepted a check in the amount of $5,000 from Barnes and his wife. On 17 August 1987, a deed executed by defendants conveying the Captain's Choice Restaurant property to the Barneses was recorded in the Carteret County Register of Deeds Office. No commission was paid to plaintiff by defendants as a result of the sale of the property.

Plaintiff filed a complaint on 16 September 1987 seeking a sum of $13,500 as a commission on the sale of the property by defendants to the Barneses. Defendants answered in due time and the case was selected for arbitration. Judgment was entered for plaintiff by the arbitrator and an appeal for trial *de novo* was entered by defendants. Plaintiff made a motion for summary judgment on 22 June 1988. The trial court granted plaintiff's motion on 5 July 1988. Defendants appealed from this order.

*Bennett, McConkey, Thompson, Marquardt & Wallace, P.A., by Dennis M. Marquardt, for plaintiff-appellee.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C. R. Wheatly, III, for defendants-appellants.*

WELLS, Judge.

Defendants assign error to the trial court's grant of summary judgment in favor of plaintiff. Defendants contend that plaintiff failed to exert "best efforts" in trying to sell the property at issue and that there was an oral modification of the written contract. Defendants further contend that no "sale" took place before the expiration of listing contract. Defendants argue that these contentions create genuine issues of material fact which must be resolved by a jury, thereby making summary judgment for plaintiff improper.

EGAN v. GUTHRIE

[94 N.C. App. 307 (1989)]

At the center of the controversy in the present case is the real estate listing contract entered into by plaintiff and defendants. That contract provides that plaintiff is granted "the exclusive right, for a period of 6 months, to and including August 15, 1987, to sell the said property . . . ." The contract also provides that plaintiff is to be paid a commission if plaintiff produces a purchaser who is ready, willing and able to purchase the property on the terms stated in the agreement or "if the property is sold or exchanged by [plaintiff, defendants] or by any other party before the expiration of [the] listing on any terms acceptable to [defendants] . . . ." We interpret this exclusive listing agreement to be an "exclusive right to sell," which "[prohibits] the owner from selling both personally and through another broker, without incurring liability for a commission to the original broker." *Joel T. Cheatham, Inc. v. Hall*, 64 N.C. App. 678, 308 S.E. 2d 457 (1983).

In *Cheatham* we stated:

> In accordance with cases of other jurisdictions, in the event the owner breaches [an exclusive right to sell] agreement, he is liable for the commission which would have accrued if the broker had obtained a purchaser during the period of the listing. The broker need not show that he could have performed by tendering an acceptable buyer, or that he was the procuring cause of the sale. The owner may breach the agreement by arranging a sale in violation of the agreement or by action which renders the broker's performance impossible.

*Id.* at 681-682, 308 S.E. 2d at 459.

In the present case defendants agreed to sell the restaurant property to a third party and accepted the sum of $5,000 from that party prior to the expiration of the listing agreement. Defendants completed the sale of the property on 17 August 1987, two days after the expiration of the listing agreement. Nothing else appearing, these actions would have constituted a breach of the exclusive right to sell agreement by defendants and entitled plaintiff to a commission on the sale and summary judgment in this case. *See Adaron Group, Inc. v. Industrial Innovators, Inc.*, 90 N.C. App. 758, 370 S.E. 2d 66, *disc. rev. denied*, 323 N.C. 363, 373 S.E. 2d 540 (1988).

The real estate brokerage transaction involves an offer on the part of the owner as seller to pay a commission upon the

rendering of performance by the broker. The performance by the broker is consideration for enforcing the agreement with the owner to pay a commission upon successful completion of the performance. One commentator has recently noted:

> The broker who desires an exclusive right to sell contract should make sure that the contract is based on an adequate consideration so that it will be enforceable. The contract should include promises on the part of the broker that he will make promotional efforts to sell the property involved, will advertise it, and will bear certain expenses designed to result in an advantageous transaction for his principal. These promises will support the agreement of the principal that the broker shall be entitled to his commissions regardless of who procures a sale of the property involved during the term of the contract.

J. Webster, P. Hetrick, L. Outlaw, *North Carolina Real Estate for Brokers and Salesmen*, p. 303 (3d Ed. 1986).

Our Supreme Court has stated:

> 'As a general rule, a broker who is not a mere middleman, but is employed by a principal to act as his agent in a transaction, is bound to exercise reasonable care and skill, or the care and skill ordinarily possessed and used by other persons employed in a similar undertaking. He must exert himself with reasonable diligence in his principal's behalf, and is bound to obtain for the latter the most advantageous bargain possible under the circumstances of the particular situation. Thus, a broker employed to sell property has the specific duty of exercising reasonable care and diligence to effect a sale to the best advantage of the principal—that is, on the best terms and at the best price possible.'

*Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964) (*quoting* 12 Am. Jur. 2d, *Brokers* § 96). Under the contract in this case, plaintiff was obligated to make, at a minimum, reasonable efforts to sell the owner's property in order to entitle plaintiff to a commission.

"A real estate broker is entitled to receive his commission when he has accomplished what the listing contract between him and the seller-principal calls for as performance on his part. If the broker has not done what the contract calls for, he is not entitled to a commission." *Webster, supra* at 294.

EGAN v. GUTHRIE

[94 N.C. App. 307 (1989)]

In the present case the listing contract between plaintiff and defendants called for plaintiff to "use your best efforts in good faith to secure a purchaser who is ready, willing, and able to purchase the property." Defendants contend in essence that plaintiff failed to comply with the terms of the agreement by failing to exert best efforts in trying to sell defendants' property.

Defendants' forecast of evidence supports this contention. We note that plaintiff's complaint contained no allegations of performance on plaintiff's part, nor did plaintiff produce any forecast of evidence as to what, if any, efforts it made to sell defendants' restaurant. The degree to which plaintiff exerted best efforts or reasonable efforts in trying to sell defendants' property is a question of fact to be properly decided by the trier of facts.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1983); *Cashion v. Texas Gulf, Inc.*, 79 N.C. App. 632, 339 S.E. 2d 797 (1986). "An issue is material if the facts alleged would constitute or would irrevocably establish any material element of a claim or defense." *Anderson v. Canipe*, 69 N.C. App. 534, 317 S.E. 2d 44 (1984). "An issue is genuine if it may be maintained by substantial evidence." *Id.* at 536, 317 S.E. 2d at 46.

We quote from *Webster*:

> The broker who seeks to recover a commission has the 'burden of proof' in establishing his contract of employment before he can recover for his services. The broker must establish, to the satisfaction of a judge or jury if a case goes to court, that a contract existed between the broker and the principal from whom a commission is claimed; the broker must establish the terms of the contract; the broker must show that he has performed under the terms of the contract; and finally, the broker must show that the principal has breached the terms of the contract for which damages are due.

*Webster, supra* at 293. Generally speaking, in order to entitle a broker to a commission, he must accomplish what he undertook to do in his contract of employment . . . accordingly, in every case, reference must be had to the terms of the particular employment in order to determine whether a broker's duties have been performed. 12 Am. Jur. 2d, *Brokers* § 182.

Defendants' forecast of evidence in the present case has raised a genuine issue as to plaintiff's compliance with the performance required by the listing contract. Defendants' contentions if proven at trial would constitute a valid defense, failure of performance, to plaintiff's claim. Defendants have therefore established the existence of genuine issues of material fact making a grant of summary judgment for plaintiff improper in this case.

Reversed and remanded.

Chief Judge HEDRICK and Judge EAGLES concur.